IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JAMES MURRAY, a/k/a
JAMES HINES,

    Plaintiff

v.

ASSOCIATE WARDEN YOUNG, ET AL.,

    Defendants

CIVIL NO. 3:CV-12-1673

(Judge Conaboy)

FILED
SCRANTON
NOV 0 5 2012
PER _____
DEPUTY CLERK

## MEMORANDUM
### Background

James Murray, a/k/a James Hines, an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania (USP-Lewisburg), initiated this pro se civil rights action seeking declaratory and injunctive relief. Named as Defendants are USP-Lewisburg Associate Warden of Programs D. Young; the Federal Bureau of Prisons (BOP);[1] the United States of America; and the United States Department of Justice (DOJ). Accompanying the Complaint is a request for leave to proceed in forma pauperis. See Doc. 3.

According to the Complaint and accompanying exhibits, Plaintiff is a 56 year old USP-Lewisburg inmate who is presently

---

[1] Plaintiff also asserts that he is proceeding against the BOP Council. This Court is not aware of the existence of such an entity.

1

serving a life sentence. Murray further describes himself as having been imprisoned for the past 34 years and as being a participant in the USP-Lewisburg Special Management Unit (SMU) Program since August 11, 2009.

Plaintiff states that he and other inmates in the SMU Program are being required to write a ten (10) page autobiography in order to advance from Level One to level Two in the SMU Program. Plaintiff contends that this mandatory autobiography requirement is an invasion of his privacy rights, the Administrative Procedures Act (APA) and constitutes an illegal taking of his personal property. The Complaint also raises general contentions that Plaintiff has been improperly denied prison employment and was subjected to a retaliatory transfer to the SMU program. He seeks injunctive and declaratory relief.

Murray also requests that: his action be certified as a class action filed on behalf of all USP-Lewisburg SMU inmates and that he be allowed to act as interim class counsel (Doc. 2).

## Discussion

**Class Certification**

Numerous federal courts have recognized that a pro se litigant such as Murray lacks the capacity to represent the interests of his fellow inmates in a class action. Cahn v. United States, 269 F. Supp.2d 537, 547 (D.N.J. 2003); Caputo v. Fauver, 800 F. Supp 168, 170 (D.N.J. 1992); Collinsgru v. Palmyra Board Of Education, 161 F.3d 225, 232 (3d Cir. 1998)(non-attorneys cannot litigate the

2

rights of others); <u>Osei-Afriye v. Medical College of Pa.</u>, 937 F.2d 876, 883 (3d Cir. 1991). It is plain error to permit a <u>pro se</u> inmate litigant to represent fellow inmates. <u>Whalen v. Wiley</u>, No. 06-809, 2007 WL 433340 *2 (D.Col. Feb. 1, 2007).

However, a <u>pro se</u> litigant seeking class certification may "continue individually to pursue his claims." <u>Id</u>. Simply put, a <u>pro se</u> prisoner pursuing a civil rights claim in federal court "must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights." <u>Id</u>.; <u>Nilsson v. Coughlin</u>, 670 F. Supp. 1186, 1190 (S.D.N.Y. 1987).

Accordingly, since a <u>pro se</u> litigant cannot represent and protect the interests of a class fairly and adequately, this action will be deemed to be solely filed by Murray. See <u>Sacaza-Jackson v. Aviles</u>, 2007 WL 38905 *3 (D.N.J. Jan. 4, 2007). Plaintiff's requests for class certification and to act as interim class counsel will be denied.

**Standard of Review**

When considering a complaint accompanied by a motion to proceed <u>in forma pauperis</u>, a district court may rule that process should not issue if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327-28 (1989), <u>Douris v. Middleton Township</u>, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks

3

an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

**BOP & DOJ**

Two of the named Defendants are the Federal Bureau of Prisons (BOP) and the United States Department of Justice (DOJ).

It is well settled that governmental entities are not persons and therefore not proper defendants in a federal civil rights action. Hindes v. F.D.I.C., 137 F.3d 148, 159 (3d Cir. 1998)( a federal agency is not a "person" subject to civil rights liability, whether or not it is in an alleged conspiracy with state actors). See also Accardi v. United States, 435 F. 2d 1239, 1241 (3d Cir. 1970); Figueroa-Garay v. Muncipality of Rio Grande, 364 F. Supp.2d 117, 128 (D. P. R. 2005). Similarly, in Shannon v. U.S. Parole Commission, 1998 WL 557584 *3 (S.D.N.Y. Sept. 2, 1998), the district court stated that "Bivens claims may not be maintained against federal agencies." See also Duarte v. Bureau of Prisons, 1995 WL 708427 *2 (D. Kan. Nov. 3, 1995)(the BOP "is not a proper defendant in a Bivens action.").

Based on an application of the above standards, the BOP and the DOJ are not properly named Defendants and therefore entitled to entry of dismissal.

**United States of America**

Plaintiff also names the United States of America as a

4

Defendant. The United States is generally immune from suit absent an explicit waiver of sovereign immunity, United States v. Mitchell, 445 U.S. 535, 538 (1980). This "immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), and extends to government agencies and employees sued in their official capacities. Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); Chinchello v. Fenton, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." Germosen v. Reno, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.). Therefore, entry of dismissal in favor of Defendant United States of America is also appropriate.

**USP-Lewisburg**

USP Lewisburg, the Plaintiff's present place of incarceration, is also named as a Defendant. A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

It is well recognized that a prison or correctional facility is not a person for purposes of civil rights liability. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County

5

Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995).

Pursuant to the above standards, USP-Lewisburg is clearly not a person and therefore not subject to civil rights liability. See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000).

**Personal Involvement**

With respect to the claims against Associate Warden Young, civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring)

6

("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by a prisoner o establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Based upon an application of the standards announced in Rode and Hampton, Plaintiff's action to the extent that it seeks to establish liability against Associate Warden Young solely based upon his supervisory capacity within USP-Lewisburg cannot proceed. Such

7

a <u>respondeat superior</u> type assertion is simply insufficient for establishing civil rights liability.[2] Likewise, any attempt by Murray to set forth a <u>Bivens</u> claim against Defendant Young solely based upon any responses he made to administrative grievances by the Plaintiff is equally inadequate under <u>Flick</u> and <u>Alexander</u>.

Accordingly, dismissal will be granted in favor of Defendant Young with respect to any claims asserted him which are solely based upon either his supervisory capacity with USP-Lewisburg or his responses to Plaintiff's administrative grievances.

**Autobiography**

It is initially noted that there are no allegations set forth in the Complaint which could establish that it was Associate Warden Young who created or implemented that requirement that SMU prisoners must write and presumably submit a ten (10) page autobiography in order to advance to Level Two in the SMU Program. Thus, the Complaint has failed to satisfy the pleading requirements of <u>Rode</u>. In fact, it is unclear as to whether this was a practice only employed at USP-Lewisburg or whether it was applicable to any federal prisoner enrolled in an SMU Program.

It is alternatively noted that a prisoner's disagreement with "evaluations and opinions regarding him" are insufficient to set forth an actionable constitutional claim. <u>Paine v. Baker</u>, 595 F.2d 197, 201 (4th Cir. 1979). In addition, the United States Supreme

---

[2] Furthermore, Plaintiff's bald assertion that congressional testimony given by Lappin can serve as a basis for a claim of deliberate indifference to his personal medical needs is insufficient.

8

Court has held that a federal inmate has "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); James v. Reno, 39 F. Supp. 2d 37, 40 ( D.D.C. 1999)(citation omitted) (a federal inmate "has no liberty interest in his security classification").

Moreover, any lack of change in custody classification and institutional placement did not result in the type of atypical or significant hardship necessary to establish a constitutional violation under Sandin v. Conner, 515 U.S. 472, 480-84 (1995).[3] See James v. Reno, 39 F. Supp. 2d 37, 40 (D.D.C. 1999). It is apparent that the requirement that participating prisoners submit a brief written autobiography to SMU staff serves a legitimate penological interest and is not overly intrusive. There is no discernible basis for this Court to second guess the determination of federal prison officials that the submission of a brief autobiography is a proper component of the SMU evaluation and rehabilitation process.

Based upon those factors, the claims relating to the requirement that Plaintiff write a brief ten (10) page autobiography as part of his participation in the rehabilitative SMU Program is also subject to sua sponte dismissal.

---

[3] The United States Supreme Court in Sandin shifted the *focus* of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481.

## Personal Property

Plaintiff further alleges that the requirement that he write a ten (10) page autobiography is an unconstitutional deprivation of his personal property.

A civil rights claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act and where an adequate remedy exists to compensate those who have suffered tortious loss. Parratt v. Taylor, 451 U.S. 527, 543-544 (1981).

The United States Supreme Court extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under any loss suffered to his or her property, a claim under § 1983 is not available. Hudson v. Palmer, 468 U.S. 517, 532-533 (1984).

Assuming arguendo that Plaintiff has adequately alleged that Defendant Young intentionally seized an item of his personal property, the Plaintiff may not obtain relief via a civil rights action if he has an adequate alternative remedy.

Murray can seek administrative relief regarding his purported loss of property via the BOP's multi-tiered administrative grievance system. Plaintiff can also file an administrative tort claim pursuant to the Federal Tort Claims Act. Since Plaintiff has adequate post deprivation remedies, his present civil rights loss of personal property claim is subject to sua sponte dismissal under the provisions of 28 U.S.C. § 1915 . See Mattis v. Dohman, 260 Fed. Appx. 458, 461 (3d Cir. 2008).

10

## APA

As previously discussed Plaintiff also asserts that the autobiography requirement violates his rights under the APA.

The APA "makes reviewable any final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; Foehl v. United States, 238 F.3d 474, 477 n.3 (3d Cir. 2001). Clearly the BOP is a federal agency.

However, it has been recognized that suit under the APA is not available to a federal prisoner with respect to challenges to BOP decisions regarding inmate housing determinations. See Brown v. Bureau of Prisons, 602 F.Supp.2d 173, 176 (D.D.C. March 16, 2009); Doe v. Wooten, 2009 WL 900994 (N.D. Ga. March 20, 2009) *7. Accordingly, the Complaint to the extent that it seeks relief under the APA is also subject to dismissal.

## Retaliation

Plaintiff states that while confined at USP-Lewisburg he was subjected to a retaliatory transfer to the SMU Program.

To establish a viable retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary

11

firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.[4] See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

Based upon a liberal review of the Complaint Plaintiff has clearly not demonstrated that he was engaged in a constitutionally

---

[4] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

12

protected activity or that his exercise of a constitutionally protected right was a substantial or motivating factor behind the alleged acts of retaliation as required by <u>Rauser</u>. There is also no indication that Murray suffered any adverse action as required by the second prong of <u>Rauser</u>. Based upon those considerations, Plaintiff has not sufficiently alleged facts which could support a claim of retaliation.[5]

**Prison Employment**

To the extent that Plaintiff is also asserting that he was denied institutional employment, it is well settled that an inmate does not have a protected liberty or property interest in prison employment. <u>James v. Quinlan</u>, 866 F.2d 627, 629-30 (3d Cir. 1989); <u>Bryan v. Werner</u>, 516 F.2d 233, 240 (3d Cir. 1975). The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right. An inmate's expectation of obtaining or keeping a specific prison job, or any job, does not implicate a protected property interest." <u>Wilkins v. Bittenbender</u>, 2006 WL 860140 *9 (M.D. Pa. March 31, 2006)(Conaboy, J.)(quoting <u>Bulger v. United States Bureau of Prisons</u>, 65 F.3d 48, 50 (5th Cir. 1995)); <u>Ingram v. Papalia</u>, 804 F.2d 595, 596 (10th Cir. 1986) (finding Constitution does not create a property interest in prison employment).

Accordingly, Plaintiff's claim that he was improperly denied a

---

[5] Since Plaintiff alleges that he was transferred to the SMU on or about August 11, 2009 and the present Complaint is deemed filed as of August 18, 2012 it also appears that this claim may be barred by Pennsylvania's two (2) year applicable personal injury statute of limitations.

prison job does not set forth a valid claim of constitutional misconduct since he clearly had no protected right to a prison job.

**Conclusion**

Since Murray's civil rights complaint is "based on an indisputably meritless legal theory," it will be dismissed, without prejudice, as legally frivolous. Wilson, 878 F.2d at 774. Finally, in light of the dismissal of this action without prejudice, Plaintiff's motion seeking appointment of counsel (Doc. 2) will be dismissed as moot. An appropriate Order will enter.

RICHARD P. CONABOY
United States District Judge

DATED: NOVEMBER 9th, 2012

14